LINDA WEGMAN, Plaintiff-Appellant, v. PAUL L. PRATT, Defendant-Appellee.

Fifth District   No. 5—90—0353

Opinion filed September 12, 1991.—Rehearing denied October 21, 1991.

Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellant.

Charlene A. Cremeens, of Belleville, and Catalina M. Alvarez, of Clayton, Missouri, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The plaintiff, Linda Wegman, brought an action in two counts against the defendant, Paul L. Pratt. In the first count the plaintiff sought both compensatory and punitive damages with respect to personal injury resulting from an alleged battery by the defendant upon her on July 5, 1988, in Ginny's Dugout, a tavern located in East Alton, Illinois. In the second count the plaintiff sought compensatory damages for personal injury arising out of the same incident, alleged, in this count, to have been caused by the defendant's negligence associated with the consumption of alcohol.

In his answer the defendant asserted as an affirmative defense with respect to the first count of the complaint, alleging battery, that upon verbal provocation he had attempted to leave the tavern but had been kicked by the plaintiff, whereupon,

"[i]mmediately after Plaintiff kicked Defendant, Defendant intentionally, knowingly and voluntarily struck Plaintiff by shoving her on or about the upper chest area, but he did so only in self-defense, and upon Plaintiff's provocation, and that in shoving Plaintiff on or about the upper chest area, Defendant used only such force as was necessary to repel Plaintiff's attack upon Defendant."

The defendant moved the trial court to dismiss the second count of the complaint, alleging negligence, "for the reason that in light of the pleadings herein, the alternative Count II of negligence cannot be made in good faith as no genuine doubt exists as to the facts insofar as they define Plaintiff's cause of action."

The defendant is an attorney. On the day the complaint was filed, August 22, 1988, plaintiff filed a motion for change of judge, asking the trial court to assign the case "to a judge from outside of

Madison County, and a judge who does not know the defendant or any of his law partners, and a judge who has no political dealings with the defendant and his law partners" for the reason that "the plaintiff has heard from numerous persons that the defendant is very active in the Democratic party, has supported numerous judges in their election campaigns; is friendly with numerous judges, and is friendly with the Clerk of the Circuit Court." The plaintiff stated further in the motion that she "believes that she will not be able to receive a fair and impartial trial if this case is heard by any judge who knows the defendant, or has had any political dealings with him." On September 26, 1988, the plaintiff filed another motion for change of judge, identical to that filed on August 22, 1988. On November 3, 1988, plaintiff filed a supplement to her motion for change of judge, stating, *inter alia,* that her attorney "believes that it would be difficult for the plaintiff to receive a fair and impartial trial from any Judge in Madison and St. Clair Counties and from any Judge who knows or has had any association with the defendant, Paul Pratt, or any members of his law firm." Plaintiff asked that the case be assigned "to a Judge from outside of Madison and St. Clair Counties and one who does not know Attorney Paul Pratt or any members of his law firm." Plaintiff stated as grounds, among other things, the defendant's activity "in Democratic politics," the number of judges who have been connected with the defendant's present or prior law firms, and "substantial contributions" for a number of years by the defendant's law firm and individuals in the firm "to many current sitting judges."

On May 5, 1989, Judge Moran, the third judge assigned to this cause, heard and denied plaintiff's motion and supplemental motion for change of judge. Thereafter, the plaintiff, as petitioner in the supreme court of Illinois, filed a motion on June 9, 1989, requesting that court to exercise its supervisory authority over three separate causes of action, including the instant one, in which Paul Pratt was a party and to "assign the cases to a judge or judges from outside of the Third Judicial Circuit who do not know Attorney Pratt or any members of his law firm." On June 29, 1989, the supreme court denied the motion for a supervisory order.

On August 11, 1989, the trial court dismissed count II of the complaint and on September 13, 1989, granted plaintiff leave to file an amended complaint in two counts, the first alleging battery and the second negligence. On December 1, 1989, the court granted the defendant's motion to strike paragraph six of count I of the amended complaint, which stated, "That defendant knew or should

have known of his violent nature when drinking or when becoming intoxicated, and with that knowledge, intentionally became intoxicated and intentionally struck the plaintiff without provocation." The trial court also granted the defendant's motion to dismiss count II of the amended complaint. The court granted leave to file a second amended complaint in conjunction with and supported by a supplemental memoranda of law. In its order the trial court stated that "[t]he instant leave granted to plaintiff to submit memoranda of law and amend her complaint shall be the last such leave granted plaintiff to plead a negligence theory in this action."

On January 17, 1990, the plaintiff filed her second amended complaint in two counts, the first alleging battery and seeking both compensatory and punitive damages, the second alleging negligence and seeking compensatory damages. On February 5, 1990, the defendant filed his answer stating that he "does admit, however, that at or about 4:33 p.m., on July 5, 1988, Defendant did strike Plaintiff by shoving her, as fully described in Defendant's AFFIRMATIVE DEFENSE, set forth herein." In his affirmative defense defendant made the same statements he had made in the affirmative defense filed in response to the complaint, including the statement that he had "intentionally, knowingly and voluntarily struck" her in the area of the upper chest in self-defense and upon her provocation. The defendant moved as well to strike paragraphs six and seven of count I of the second amended complaint and count II in its entirety. Paragraphs six and seven of count I state as follows:

"6. That defendant knew or should have known that he suffered from alcoholism and that a foreseeable consequence of drinking was that defendant was subject to violent outbursts.

7. That defendant intentionally became intoxicated and intentionally struck the plaintiff without provocation."

Plaintiff denied each and every allegation of defendant's affirmative defense. In an order entered on February 16, 1990, the trial court expressly found that "[t]he only issue as far as liability is concerned is whether or not defendant's conduct was justified as self[-]defense." The court allowed the defendant's motions and accordingly ordered stricken paragraphs six and seven of count I and all of count II of the second amended complaint. The court stated that "[p]laintiff is not permitted in the future to plead a negligence theory in this action as per prior Order of this Court." On that day the case was set for jury trial on August 6, 1990.

On May 4, 1990, the defendant moved to strike the prayer for punitive damages in count I of the second amended complaint. In an order entered May 31, 1990, the trial court granted the motion, having determined that, "based upon the record as a whole and including the transcript of the criminal trial [*People of the State of Illinois v. Paul L. Pratt*, No. 88 EACM 129, in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, on September 19, 1988,] submitted by plaintiff to this Court, *** punitive damages are not appropriate in this case and are hereby stricken."

On May 22, 1990, plaintiff filed a notice to take discovery depositions of 14 persons, including "George Moran, Jr.," the judge presiding in the instant case, described as a "preoccurrence" witness in a supplement, filed the same day, to plaintiff's answers to defendant's interrogatories. In an order entered the same day the trial court *sua sponte* quashed the depositions of the individuals named on the notice to take discovery depositions, stating, "It is obvious that the Attached Notice to Take Discovery Depositions has nothing to do with the merits of this case."

The next day, on May 23, 1990, plaintiff filed an "Additional Motion for Change of Judge and for the Honorable George Moran, Jr. To Be Disqualified in This Case, and To Revoke the Order of May 22, 1990 Quashing the Deposition Notice," stating in part:

> "c. George Moran, Sr.[,] is believed to have information concerning one or more prior incidents when the Defendant was intoxicated and may have been involved in a physical altercation with the Defendant, when the Defendant is rumored to have been inebriated at a bar association meeting.
>
> d. George Moran, Jr.[,] is believed to have personal information concerning the event concerning his father, George Moran, Sr.[,], as stated above and is believed to have been involved in the incident following the bar association meeting. All of this would be relevant in the area of punitive damages and the Defendant's predisposition to physical altercations when he becomes intoxicated."

The plaintiff stated further in the motion that the court's unilateral striking of the notice to take discovery depositions "without even giving the Plaintiff an opportunity to be heard on the matter, shows that the Court should in fact not hear this case, and that the Order of May 22, 1990 should be rescinded." The plaintiff asserted that "the quashing of the deposition notice by the Court shows a predisposition by the Court in this case to rule in favor of the Defendant and is further evidence that the Court should be disqualified."

On the same day, May 23, 1990, plaintiff filed another motion for change of judge, requesting that Judge Moran disqualify himself from the case. Plaintiff stated that "one of the theories of [her] case is that the defendant, Paul Pratt, has an alcohol problem, and that when he drinks he becomes aggressive and ends up in fights." She stated further that it has been brought to the attention of her attorney that George Moran, Jr., and George Moran, Sr., "may have specific knowledge concerning these facts and that there is a good probability that they will be witnesses at the trial." A hearing was conducted on May 30, 1990, and in the order entered May 31, 1990, the trial court found "that plaintiff's Motion For Change of Judge and Additional Motion for Change of Judge contain matters which have previously been brought to this Court's attention and that the plaintiff and her attorney have previously filed numerous Motions for Change of Judge and Change of Venue including a Motion for Supervisory Order to the Illinois Supreme Court." The trial court denied these motions of the plaintiff.

In the order of May 31, 1990, the trial court expressly took under advisement a motion of the defendant for sanctions that was filed on May 29, 1990, and argued at the hearing on May 30, 1990. In that motion the defendant sought an order dismissing the second amended complaint with prejudice pursuant to Supreme Court Rule 219(d) (134 Ill. 2d R. 219(d)) and section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—611) for the reason that "Plaintiff and her attorneys have wilfully engaged in unwarranted, abusive and contumacious discovery procedures designed to circumvent this Court's previous orders ***." Defendant stated further that:

> "Plaintiff's Additional Motion for Change of Judge contains allegations that the material sought thereby would be relevant when she and her attorneys know that to be untrue, and instead they are employing these tactics purely as a subterfuge to accomplish a reinstatement of paragraphs 6 and 7 of Count I and Count II of her Complaint, which were previously stricken and dismissed, respectively, and once more to accomplish the unwarranted removal of this action from Madison County."

In an order entered June 1, 1990, the trial court, acting upon defendant's motion for sanctions, dismissed count I of plaintiff's second amended complaint with prejudice. In the order the trial court first addressed plaintiff's attorney's having notified the media of the hearing on May 30, 1990:

"This hearing had been specially set for this date and time during a telephone conference between the attorneys and this Court on May 29, 1990 at 4:15 p.m., the day before. No other persons were privy to this conversation or the date and time said Motion would be heard. At the time of the hearing an individual in the courtroom identified himself as a newspaper reporter. Both attorneys for the defendant and the Court denied contacting the media. It was obvious to the Court that Mr. Shaikewitz [plaintiff's counsel] alerted the media of this hearing, a fact which Mr. Shaikewitz did not deny in open court. The Court finds the conduct of Mr. Shaikewitz in open court to be inappropriate, direct and intentional. He has repeatedly attempted to create a circus atmosphere in this court and make a mockery of our judicial system."

The trial court found as well that "the plaintiff and her attorney have demonstrated in the past a pattern of conduct which demonstrates a deliberate and willful disregard of the Court's orders and authority. It is obvious that plaintiff and her attorney have attempted to expand this litigation and try the defendant's character rather than the facts of this case." The court reasoned that, in light of the defendant's admission that he intentionally struck the plaintiff and his pleading of justification and self-defense as an affirmative defense,

"the issues in this case became simple and clearly defined. Nevertheless, plaintiff refuses to follow the Court's orders and has committed a severe abuse of process by subpoenaing this Judge and other witnesses for deposition who by plaintiff's own admission had no knowledge of the facts of this case but were called to testify on irrelevant matters. This is clearly an abuse of process for an obvious ulterior motive and purpose by the plaintiff and her attorney to have this Judge removed from this case. When the depositions were quashed, plaintiff now claims judicial bias by filing an Additional Motion for Change of Judge. Plaintiff and her attorney have repeatedly filed numerous Motions for Change of Judge and Change of Venue including a Motion For Supervisory Order to the Illinois Supreme Court. Plaintiff and her attorney have refused to try this case on its merits and follow the Court's orders, have committed a severe abuse of process, and inappropriately contacted the media.

Although this Court recognizes that a dismissal is a drastic sanction, a situation can hardly be imagined where it would be more appropriate and justified than the present one."

The plaintiff has appealed presenting four issues for review: (1) whether the trial court erred in dismissing count I of the plaintiff's second amended complaint with prejudice as a sanction for alleged abuse of process and for allegedly conducting improper discovery; (2) whether the trial judge erred in failing to recuse himself from hearing this matter "when it was apparent that he may be called as a witness in this case and when it is a matter of public record that defendant was and is a major contributor to his campaign"; (3) whether the trial court erred in dismissing with prejudice count II of the second amended complaint which was based on negligence and pleaded as an alternative theory of recovery; and (4) whether the trial court erred in striking the prayer for punitive damages in count I of the second amended complaint, which count alleged the intentional tort of battery.

With respect to the first issue presented for review, concerning the sanction of dismissal of count I with prejudice, the plaintiff argues that her subpoenaing of the trial judge for discovery deposition was not improper "in light of the fact that the trial judge may have been a witness to a prior instance of alcohol[-]induced violence committed by the Defendant." Because of the nature of the alleged attack and the defenses of self-defense and provocation asserted, she urges, discovery concerning defendant's pugnaciousness or combativeness is relevant to the issues in the case. She states that "her motive for subpoenaeing [sic] Judge Moran and his father was simply to explore what they knew about Pratt's history of pugnaciousness related to the incident at the Madison County Bar Association meeting." The plaintiff cites civil cases from foreign jurisdictions in support of her position that in a civil action for battery or assault, when the defendant raises the issue of who initiated the aggression, as did the instant defendant, evidence of the defendant's reputation for violence or pugnaciousness is admissible. "Assuming for the sake of argument that noticing the discovery deposition of the trial judge is inappropriate (Plaintiff asserts it was proper)," she contends, "then the sanction of quashing the deposition is the appropriate sanction, not striking all deposition notices, including eyewitnesses, and then dismissing the case." Plaintiff seeks reversal of the trial court's dismissal of count I with prejudice.

In his brief the defendant maintains that the trial court's dismissal with prejudice as a sanction for abuse of discovery and abuse

of process was completely justified by the blatant and contemptuous refusal of plaintiff and her attorney to accept the authority of the trial court and the supreme court with respect to the issues of change of venue and negligent intoxication. Defendant argues that "[u]nder the guise of simple discovery, Plaintiff obviously sought to circumvent the prior rulings which were adverse to her," attempting to reintroduce the theory of negligent intoxication through such discovery in disregard of the trial court's order eliminating that theory from the case. "Furthermore," he urges, "by serving a subpoena upon Judge Moran, Plaintiff hoped to 'make' him a witness in the case, thus requiring him to recuse himself."

Sanctions for failure to comply with discovery are provided in Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)). (*Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 436 N.E.2d 1068.) Rule 219(d) (134 Ill. 2d R. 219(d)) provides in part that

> "[i]f a party wilfully obtains or attempts to obtain information by an improper discovery method, wilfully obtains or attempts to obtain information to which he is not entitled, or otherwise abuses these discovery rules, the court may enter any order provided for in paragraph (c) of this rule."

Among the sanctions that may be imposed pursuant to Rule 219(c) is dismissal of an action with or without prejudice (134 Ill. 2d R. 219(c)(v)). (*Gallo*, 107 Ill. App. 3d 21, 436 N.E.2d 1068.) Discovery rules permit the imposition of sanctions upon a party deemed by the trial court to have abused or disregarded discovery rules and procedures. (*Harris v. Harris* (1990), 196 Ill. App. 3d 815, 555 N.E.2d 10.) The imposition of sanctions under Rule 219(c) is a matter within the discretion of the trial court, and the reviewing court will uphold the trial court's decision, absent an abuse of discretion. *Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 412 N.E.2d 608.

In determining which sanction to impose, the trial court must seek to accomplish discovery rather than to inflict punishment; because dismissal is a severe sanction, it should be invoked only in those cases where the actions of the party show a deliberate, contumacious, or unwarranted disregard of the court's authority. (*Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904.) The entry of a dismissal under Rule 219(c) should be employed as a last resort in order to enforce the rules of discovery and should be set aside when a trial on the merits may be had without hardship or prejudice. (*Humboldt-Armitage Corp. v. Illinois Fair Plan Association* (1980), 86 Ill. App. 3d 888, 408 N.E.2d 307.) An order of sanctions

that is just within the meaning of Rule 219 is one that provides both for discovery and for trial on the merits. *Gallo*, 107 Ill. App. 3d 21, 436 N.E.2d 1068.

■ The trial judge indicated in his order of dismissal of count I with prejudice that plaintiff had committed a severe abuse of process by subpoenaing him to testify about "irrelevant matters" "for an obvious ulterior motive and purpose," namely, removal of him from the case. The court concluded in its order that plaintiff and her attorney had refused to try the case on its merits and follow the court's orders, had committed a severe abuse of process, and had inappropriately contacted the media. Because legal process may not be used to accomplish some improper ulterior purpose, a subpoena used for any purpose other than to compel the attendance of a person as a witness is an abuse of the process of the court. (*People v. McWhorter* (1986), 113 Ill. 2d 374, 498 N.E.2d 1154.) However, here the record does not show that the subpoenaing of Judge Moran was intended to accomplish an improper ulterior motive.

Prior to the entry of the trial court's order on May 31, 1990, striking the prayer for punitive damages in count I of the second amended complaint, the plaintiff urged in her "Additional Motion for Change of Judge and for the Honorable George Moran, Jr. To Be Disqualified in This Case, and To Revoke the Order of May 22, 1990 Quashing the Deposition Notice" filed on May 23, 1990, that personal information of Judge Moran concerning the incident following the bar association meeting "would be relevant in the area of punitive damages and the Defendant's predisposition to physical altercations when he becomes intoxicated." At the hearing conducted on May 30, 1990, plaintiff argued that evidence of prior acts is admissible to show wilful and wanton misconduct with reference to punitive damages. In this court she has cited support, albeit in the form of case law from foreign jurisdictions, for her position that evidence of the defendant's character for violence or pugnaciousness is admissible when the defendant has raised the affirmative defense of self-defense in a civil suit for battery. Although we make no determination concerning the admissibility of such evidence in Illinois or the applicability of her argument concerning punitive damages to an intentional tort, we do not think that the plaintiff's actions with respect to the subpoenaing of Judge Moran may be said to show a deliberate, contumacious, or unwarranted disregard of the trial court's authority. Certainly, contacting the media as described by the trial court does not display such disregard. Nor does the record indicate that a trial on the merits may not be had with-

out hardship or prejudice. Under all of the circumstances, imposition of the ultimate sanction of dismissal of count I of the second amended complaint was an unreasonable exercise of the trial court's discretion. That part of the trial court's judgment is accordingly reversed and the cause remanded for further proceedings. We note that when count I of the second amended complaint was dismissed, paragraphs six and seven thereof had been stricken. The plaintiff has asserted no error with respect to the trial court's striking of these two paragraphs. Hence, upon remand count I shall not include paragraphs six and seven.

Concerning the second issue plaintiff raises for review, whether Judge Moran erred in failing to recuse himself from hearing this matter, she states that "after it had become apparent that Judge Moran had knowledge of relevant facts involved in the case, and since he may have been called as a witness, Plaintiff filed an Additional Motion to Change Venue for Judge Moran to disqualify himself, which was denied." She asks this court to reverse the trial court's denial of her motion for a change of venue and to allow this case to proceed "before another judge from outside of Madison County or St. Clair County who doesn't know the Defendant or members of his law firm."

█ Contrary to plaintiff's assertion, however, the instant record does not show that Judge Moran had knowledge of relevant facts involved in the case; in her motion for change of judge filed on May 23, 1990, plaintiff stated that "it has been brought to plaintiff's attorney's attention that George Moran, Jr.[,] and George Moran, Sr.[,] may have specific knowledge concerning these facts." Plaintiff has not raised as error on review the trial court's quashing in the order entered May 22, 1990, of the depositions of the individuals named on the notice to take discovery depositions, including Judge Moran. Under our Code of Judicial Conduct, a judge is required to disqualify himself if he is "likely to be a material witness in the proceeding." (*People v. Ernest* (1990), 141 Ill. 2d 412, 566 N.E.2d 231; see 134 Ill. 2d R. 63(C)(1)(e)(iv).) However, the record before us does not indicate that Judge Moran is likely to be a material witness in these proceedings.

The plaintiff makes numerous other assertions with reference to her argument that "[t]he totality of the circumstances surrounding this case provide the factual basis for Plaintiff's perception of prejudice resulting if the case is heard in Madison County by a judge who knows Attorney Pratt or members of his firm." The plaintiff has, however, already advanced these assertions before the supreme

court, which denied her motion for a supervisory order on June 29, 1989. Nothing in the record since that date supports her contention that the trial judge erred in failing to recuse himself from hearing this matter. Therefore, that part of the judgment of the trial court denying these motions for change of judge is affirmed.

With regard to the third issue raised for our review, pertaining to the dismissal of count II of the second amended complaint, plaintiff relies heavily upon *Blackburn v. Johnson* (1989), 187 Ill. App. 3d 557, 543 N.E.2d 583, in support of her position that the trial court must recognize the viability of plaintiff's negligence claim despite defendant's admission of intentionally striking plaintiff. Defendant contends that the issue is whether the plaintiff should be allowed to "plead and pursue the alternative claim of negligence in Count II when the uncontested facts disclose that an assault/battery and only an assault/battery occurred."

In *Blackburn* the plaintiffs brought an action for wrongful death in two counts, one based on intentional tort, the other on negligence. Plaintiff's counsel abandoned the intentional tort theory and argued for a verdict based on negligence. The jury returned a verdict for defendant on the intentional tort count and for plaintiffs in the amount of $599,000 on the negligence count. On appeal the principal issue related to whether the fact situation could sustain a negligence verdict. The defendant argued that an intentional tort, namely, a stabbing, had occurred and that the jury verdict could not stand. The defense at trial was one of self-defense. The negligence theory of the plaintiff was that the victim's father had "either (1) flailed or swung the knife, a dangerous instrumentality, in such a fashion as to injure [the deceased victim], or (2) used excessive force in his self-defense, in that he should have known with the exercise of ordinary care that the use of deadly force was unreasonable." (187 Ill. App. 3d at 559-60, 543 N.E.2d at 585.) The plaintiffs did not disagree that the conduct of the victim's father in stabbing him was intentional. Plaintiffs argued, however, that the negligence arose out of the decision of the necessity to use deadly force. The court observed:

> "The parties' arguments focus on different conduct. Defendant focuses on the act of the stabbing, and maintains this was done intentionally. She [as executor of the estate of the victim's father,] argues, therefore, that any recovery based on negligence is improper.
>
> Plaintiffs point, not to the stabbings, but the conduct surrounding them. They believe [the victim's father's] negligence

is based on a misperception of the need to use deadly force in self-defense. They, in essence, would find that a person using self-defense would have a duty to the other party to only use so much force as a reasonably prudent person would in that situation. In the case of deadly force, a person could only employ it if a reasonably prudent person would determine it was necessary to do so to avoid imminent harm or death to himself or others. Thus, whether the ultimate act (the stabbing) is intentional or not is immaterial. The focus is on the determination of the necessity of the use of the force. Therefore, under these facts, an intentional act can be performed negligently." (187 Ill. App. 3d at 560, 543 N.E.2d at 585.)

The court expressed its awareness of "possibly treading on new ground" but concluded that "the plaintiffs' arguments have merit" (187 Ill. App. 3d at 562, 543 N.E.2d at 586) and determined that the evidence could have justified a finding that the victim's father overreacted in gaining control of his intoxicated son who had struck his mother.

■ The instant plaintiff maintains that, as in *Blackburn*, it is reasonable for her to assert that the defendant's attack may have been a result of his misperception as to the need to use force. In her second amended complaint, plaintiff alleged negligence with respect to the conduct associated with or "surrounding" the striking of the plaintiff and not with the striking itself. Plaintiff expressly alleged the following "negligent acts or omissions on the part of the defendant":

"e. using excessive force in striking plaintiff in response to wholly imagined threats, which were induced as a foreseeable consequence of his intoxication;

f. misinterpreting plaintiff's conduct and striking her which was a foreseeable consequence of defendant's intoxication."

As in *Blackburn*, the defense of self-defense has been asserted with respect to the claim of battery. A factual question exists concerning that defense. In light of the holding in *Blackburn*, we agree with the plaintiff that the trial court erred in dismissing count II of the second amended complaint.

Further, section 2—613(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—613(b)) authorizes alternative pleadings even when counts may be contradictory or inconsistent. (See *Neff v. Davenport Packing Co.* (1971), 131 Ill. App. 2d 791, 268 N.E.2d 574.) This section does not mean that the plaintiff must

submit evidence and attempt to prove two inconsistent alternatives. (See *Johnson v. Illini Mutual Insurance Co.* (1958), 18 Ill. App. 2d 211, 151 N.E.2d 634.) The plaintiff may choose which alternative he will prosecute or abandon. (*Johnson,* 18 Ill. App. 2d 211, 151 N.E.2d 634.) In the instant case the plaintiff could later have chosen to abandon her theory of battery and to proceed only upon the claim of negligence. For this further reason we think that the trial court erred in dismissing count II of the second amended complaint. That part of the trial court's judgment is therefore reversed and the cause remanded for further proceedings.

■ With respect to the fourth and final issue raised for review, pertaining to the striking of the prayer for punitive damages of count I, the trial court granted the defendant's motion to strike the prayer based in part upon a reading of the transcript of the criminal trial that arose out of the incident giving rise to the instant suit. We deem the motion to strike the prayer to be a motion made under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). The determination of a section 2—615 motion to strike is made by considering only the facts alleged in the pleading. (*Maas v. Cohen Associates, Inc.* (1983), 112 Ill. App. 3d 191, 445 N.E.2d 517.) It is error for a trial court to consider affidavits, depositions, or exhibits when considering a section 2—615 motion to strike or dismiss a complaint for failure to state a cause of action. (*Maas,* 112 Ill. App. 3d 191, 445 N.E.2d 517.) We conclude that it was error for the trial court to consider the transcript of the criminal proceeding arising out of this incident in ruling upon the defendant's motion to strike the prayer for punitive damages of count I of the second amended complaint.

Battery is an intentional tort. (*Walker v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 645, 415 N.E.2d 1213.) It has long been established that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts wilfully, or with such negligence as to indicate a wanton disregard of the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) It is undisputed that the plaintiff in count I has alleged battery. Under a section 2—615 motion all facts well pleaded by the complaint are taken as true. (See *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 325 N.E.2d 799.) Under the circumstances, the trial court erred in striking the prayer for punitive damages in count I of the second amended com-

plaint, and we accordingly reverse that part of the judgment and remand the cause for further proceedings.

In summary, our disposition is as follows: that part of the judgment dismissing counts I and II of the second amended complaint is reversed, and the cause is remanded, count I upon remand to include a prayer for punitive damages but not to include paragraphs six and seven; that part of the judgment denying the plaintiff's motions for change of judge is affirmed.

Affirmed in part; reversed in part and remanded with directions.

LUND and KNECHT,* JJ., concur.

---

*Justices Lund and Knecht were assigned to this case following oral argument in substitution of Justices Harrison and Welch. Justices Lund and Knecht have read the briefs and listened to the tape of oral argument.